UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X

Capitol Records, LLC; Caroline Records, Inc.;     :
Virgin Records America, Inc.; EMI Blackwood
Music, Inc.; EMI April Music, Inc.; EMI Full     :
Keel Music, Inc.; EMI Virgin Music, Inc.; EMI
Robbins Catalog, Inc.; EMI Waterford Music,     :
Inc.; EMI Grove Park Music, Inc.; Colgems-       INDEX No. 08 CV 5831 (HB)
EMI Music, Inc.; and EMI Virgin Songs, Inc.,    :    ECF CASE

           Plaintiffs,                           :

               vs.                               :

VideoEgg, Inc.; hi5 Networks, Inc.; and Does    :
1-10,
                                                 :
           Defendants.

------------------------------------- X

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ........................................................................................................................... 2

ARGUMENT .................................................................................................................. 4

I.      THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER HI5 ............. 4

      A.      Hi5 is not amenable to service of process under the laws of New York ............... 4

            1.      Section 301 ................................................................................................ 4

            2.      Section 302 ................................................................................................ 6

                 a.      Section 302(a)(1) ........................................................................ 6

                 b.      Section 302(a)(2) ...................................................................... 10

                 c.      Section 302(a)(3) ...................................................................... 11

                      (1)     Section 302(a)(3)(i) ...................................................... 13

                    (2)     Section 302(a)(3)(ii) ..................................................... 14

      B.      The exercise of jurisdiction over hi5 would violate principles of due
process .................................................................................................................. 15

II.     VENUE IN NEW YORK IS IMPROPER ................................................................. 16

      A.      The Complaint should be dismissed for improper venue .................................... 16

      B.      In the alternative, this case should be transferred to the Northern District
of California ......................................................................................................... 17

            1.      Convenience of witnesses ........................................................................ 18

            2.      Convenience of the parties ....................................................................... 19

            3.      Locus of operative facts ........................................................................... 20

            4.      Location of documents and other evidence .............................................. 20

            5.      Witnesses within the subpoena power of this Court ................................. 20

            6.      Familiarity of transferee forum with applicable law ................................ 21

            7.      Relative means of the parties ................................................................... 21

            8.      Plaintiffs' choice of forum ....................................................................... 22

            9.      Trial efficiency and general interests of justice ....................................... 22

CONCLUSION .............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*AEC One Stop Group v. CD Listening Bar, Inc.*,
   326 F. Supp. 2d 525 (S.D.N.Y. 2004)......................................................16, 17, 18, 20, 21

*A.I. Trade Finance, Inc. v. Petra Bank*, 989 F.2d 76 (2d Cir. 1993) ................................5

*Ahava Food Corp. v. Donnelly*, 2002 U.S. Dist. LEXIS 23756 (S.D.N.Y. 2002)........................11

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779 (2d Cir. 1999)..............4

*Bensusan Restaurant Corp. v. King*, 126 F.3d 25 (2d Cir. 1997)..................................10

*Boreal Laser, Inc. v. Coherent, Inc.*, 1992 U.S. Dist. LEXIS 276 (S.D.N.Y. 1992)....................20

*Calder v. Jones*, 465 U.S. 783 (1984)........................................................15

*Carroll v. Kahn*, 2003 U.S. Dist. LEXIS 17902 (N.D.N.Y. 2003).........................................11, 12

*Chew v. Dietrich*, 143 F.3d 24 (2d Cir. 1998) .............................................................15

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)........................7, 8, 9, 10

*CutCo Industrial, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986)...................................6

*Duncan v. Nu-Life, Inc.*, 1998 U.S. Dist. LEXIS 1729 (S.D.N.Y. 1998) .....................................12

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
   2005 U.S. Dist. LEXIS 12397 (S.D.N.Y. 2005)...................................................5, 8, 10, 12

*Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55 (2d Cir. 1985)............................5

*Hsin Ten Enterprise U.S. v. Clark Enterprises*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000).................8

*ISI Brands, Inc. v. KCC International, Inc.*, 458 F. Supp. 2d 81 (E.D.N.Y. 2006)...................7, 10

*K.C.P.L., Inc. v. Nash*, 1998 U.S. Dist. LEXIS 18464 (S.D.N.Y. 1998).......................................16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236 (2d Cir. 1999) .......................................................14

*Kwik Goal, Ltd. v. Youth Sports Publishing Inc.*,
    2006 U.S. Dist. LEXIS 34460 (S.D.N.Y. 2006)........................................17, 18, 20, 21, 22

*Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996)...............4

*New Angle Pet Products, Inc. v. MacWillie's Gold Products, Inc.*,
    2007 U.S. Dist. LEXIS 46952 (S.D.N.Y. 2007)..................................................................8

*Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 454 (S.D.N.Y. 2006) .................................5, 6

*PDK Laboratories v. Friedlander*, 103 F.3d 1105 (2d Cir. 2001)....................................................4

*Philip Morris USA Inc. v. Veles Ltd.*, 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. 2007).................8

*Pitbull Productions, Inc. v. Universal Netmedia, Inc.*,
    2008 U.S. Dist. LEXIS 30633 (S.D.N.Y. 2008)...........................................4, 7, 10, 13, 14

*Plunket v. Estate of Conan Doyle*, 2001 U.S. Dist. LEXIS 2001 (S.D.N.Y. 2001) ......................11

*Realuyo v. Villa Abrille*, 2003 U.S. Dist. LEXIS 11529 (S.D.N.Y. 2003),
    *aff'd* 93 Fed. Appx. 297 (2d Cir. 2004)..................................................................7, 8, 15

*Richtone Design Group, LLC v. Classical Pilates, Inc.*,
    2006 U.S. Dist. LEXIS 64370 (S.D.N.Y. 2006)................................................................13

*Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040 (S.D.N.Y. 1987) ..........12

*Rubin v. City of New York*, 2007 U.S. Dist. LEXIS 23003 (S.D.N.Y. 2007) .................................8

*Student Advantage, Inc. v. International Student Exch. Cards, Inc.*,
    2000 U.S. Dist. LEXIS 13138 (S.D.N.Y. 2000)..................................................................8

*Unique Industries, Inc. v. Sui & Sons International Trading Corp.*,
    2007 U.S. Dist. LEXIS 83725 (S.D.N.Y. 2007)..............................................................4, 6

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Warner Brothers Entertainment Inc. v. Ideal World Direct*,
516 F. Supp. 2d 261 (S.D.N.Y. 2007)....................................................................4, 6, 7, 9

*Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88 (2d Cir. 2000) ...................................................4

*Young v. New Haven Advocate*, 315 F.3d 256 (4th Cir. 2002) ....................................................16

## NEW YORK STATE CASES

*Hermann v. Sharon Hospital, Inc.*, 135 A.D.2d 682 (2d Dep't 1987) ...........................................11

*Ingraham v. Carroll*, 90 N.Y.2d 592 (1997)...............................................................................13

## FEDERAL STATUTES

17 U.S.C. § 101 et seq....................................................................................................................1

28 U.S.C. § 1391(c) ....................................................................................................................16

28 U.S.C. § 1400(a) ....................................................................................................................16

28 U.S.C. 1404....................................................................................................................1, 17

28 U.S.C. 1406....................................................................................................................1, 17

## NEW YORK STATUTES

NY CPLR § 301...................................................................................................................4-6, 13

NY CPLR § 302............................................................................................................... *passim*

## PRELIMINARY STATEMENT

Defendant hi5 Networks, Inc. ("hi5" or "the Company") submits this memorandum of law in support of its motion to dismiss for lack of personal jurisdiction and improper venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), or, alternatively, to transfer venue to the Northern District of California pursuant to 28 U.S.C. §§ 1404 and 1406.[1]

On June 27, 2008, Plaintiffs filed a complaint in this Court against hi5 and VideoEgg, Inc. ("VideoEgg") alleging violations of the Copyright Act, 17 U.S.C. § 101 et seq., and copyright infringement and misappropriation and unfair competition under New York common law. Hi5 is a California corporation that has its sole place of business in San Francisco and is not otherwise present in New York. Plaintiffs allege in the most conclusory of terms that hi5 is subject to personal jurisdiction in New York. Plaintiffs have not, and cannot, allege facts to satisfy New York's requirements, or those of the Due Process Clause, for the exercise of personal jurisdiction over hi5. For most of the same reasons that there is no personal jurisdiction here, venue in the Southern District of New York is improper. On these grounds, the Company respectfully requests that the Complaint be dismissed. In the event the Court denies hi5's motion to dismiss, hi5 moves the Court to transfer this case to the Northern District of California. Among other factors warranting a transfer, the vast preponderance of witnesses and evidence will be located in that District, where both hi5 and VideoEgg have their operations. Moreover, Plaintiffs, several of which are California companies and all of which are subsidiaries of a multi-billion-dollar British music conglomerate, would have little hardship litigating the matter there.

---

[1] On July 16, 2008, the Court entered a Stipulation and Order extending time for hi5 to answer or move against the Complaint until July 31, 2008.

## FACTS

Hi5 is a small, private, start-up company with approximately 105 employees. (*See* Affidavit of Ramu Yalamanchi ¶ 2 ("Yalamanchi Aff.").) It has been in business for less than six years. (*Id*.) Hi5 is incorporated and registered in California and has its principal place of business in San Francisco. (*Id*.) From its base of operations in San Francisco, hi5 operates a social networking website found at www.hi5.com ("the website"). Among other things, the website allows users to create "profiles" to describe themselves, their hobbies, and their likes and dislikes. (*Id*. ¶ 3.) Users can also search for friends who have profiles on the website, join themed "groups" or message boards, and post information, ideas, and opinions. (*Id*.) Users of the website are not charged any fees to view or to use the content and capabilities of the website. (*Id*. ¶ 13; *see also* Cmplt. ¶ 37 (stating hi5 offers free membership).) Interaction between users and hi5 is minimal and generally limited to registration and the provision of technical support. (Yalamanchi Aff. ¶ 14.)

All hi5 employees work in San Francisco; hi5 has no employees residing in New York State. (*Id*. ¶ 4, 11.) The website was created and is maintained in California; all software code for the website is located in California. (*Id*. ¶ 11.) The Company has never had any office, telephone, or telephone listing in New York State. (*Id*. ¶ 5.) Hi5 is not registered or licensed to transact business in New York State, and the Company does not lease or own any plant, warehouse, retail space, or other type of real property in New York State. (*Id*. ¶¶ 6, 7.) It has no bank accounts in New York State. (*Id*. ¶ 8.) It has never commenced legal action in New York State, nor has hi5 designated anyone to accept service of process for the company in New York State. (*Id*. ¶¶ 9, 10.) Hi5 does not advertise the website or solicit business in any print, television, or radio medium published in, broadcast to, available in, or otherwise targeted to New

York State.  (*Id.* ¶ 15.)  While hi5 has occasionally entered into contracts with companies resident in New York, none of these contracts has any connection to this case.  (*Id.* ¶ 17.)

Hi5 does not advertise the website to get new users, instead relying on word-of-mouth endorsements and on current users inviting their friends and acquaintances to encourage new users to sign up.  (*Id.* ¶ 15.)  Some advertisements by companies other than hi5 appear on the website, and the company derives most of its revenues from displaying these ads, but hi5 does not make any sales to its users or allow any sales to be made on the website or otherwise do business through the website.  (*Id.* ¶¶ 3, 13.)  Advertisers cannot contract for or purchase advertising space through the website.  (*Id.* ¶ 16.)  While advertisements from third parties located in New York may have appeared on the website, hi5 has never sought out advertisers on the basis of their residing in New York.  (*Id.*)  And hi5 does not specifically or intentionally direct content to users in New York.  (*Id.* ¶ 12.)  To date, the website has not been commercial in nature: no goods have been sold and no registration or membership fees have been charged or collected.

In the Complaint, Plaintiffs allege, in broad terms and without even mentioning hi5 by name, that this Court has personal jurisdiction over the defendants in this case by reason "that, among other things, Defendants are doing business in the State of New York and in this judicial district, and Plaintiffs are suffering harm in this District, among others."  (Cmplt. ¶ 6.)  Plaintiffs do not attempt to establish any connection between California domiciliary hi5 and New York State.  (*See* Cmplt.)

## ARGUMENT

### I.    THIS COURT DOES NOT HAVE PERSONAL JURISDICTION OVER HI5

On this motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Plaintiffs'

burden is to allege facts that, if true, amount to a prima facie showing that this Court has personal

jurisdiction over defendant hi5. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171

F.3d 779, 784 (2d Cir. 1999).  Because the Copyright Act does not confer personal jurisdiction

over defendants, the Court must apply the law of the forum state, New York, to determine

whether it has jurisdiction over a non-domiciliary defendant.  *PDK Labs v. Friedlander*, 103

F.3d 1105, 1108 (2d Cir. 2001); *Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp.*, 2007 U.S.

Dist. LEXIS 83725, at *9 (S.D.N.Y. 2007).  The Second Circuit requires a two-part inquiry:

"First, [the court] must determine whether the plaintiff has shown that the defendant is amenable

to service of process under the forum state's laws; and second, it must assess whether the court's

assertion of jurisdiction under these laws comports with the requirements of due process."

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *accord*

*Warner Bros Entertainment Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 265 (S.D.N.Y.

2007).  Hi5 is not amenable to service of process under the laws of New York and thus is not

subject to personal jurisdiction here; further, it would offend the notions of fair play and justice

underlying the Due Process Clause of the Fourteenth Amendment to hale the Company into this

Court.

### A.    Hi5 is not amenable to service of process under the laws of New York

New York extends jurisdiction over non-domiciliaries under two statutes: Section 301

(general jurisdiction) and Section 302 (specific jurisdiction) of the New York Civil Practice Law

and Rules ("C.P.L.R.").  Plaintiffs do not specify which statute they contend confers jurisdiction over hi5, and in any case fail to plead sufficient facts to satisfy either standard.

      1.      **Section 301**

To be sufficiently "present" in New York to be subject to general jurisdiction in the state under Section 301, an entity must conduct business in the state that is "continuous, permanent, and substantial."  *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000); *Pitbull Prods., Inc. v. Universal Netmedia, Inc.*, 2008 U.S. Dist. LEXIS 30633, at *15-16 (S.D.N.Y. 2008).  New York courts have found the following "traditional indicia" determinative in deciding whether a foreign party is "doing business" in New York: "(1) the existence of an office in New York; (2) the solicitation of business in New York; (3) the existence of bank accounts or other property in New York; and (4) presence of employees of the foreign defendant in New York." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 U.S. Dist. LEXIS 12397, at *7-8 (S.D.N.Y. 2005) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985)).  This requirement is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York."  *Overseas Media, Inc. v. Skvortsov*, 407 F. Supp. 2d 454, 567-68 (S.D.N.Y. 2006).

Plaintiffs' bare allegation that defendants "are doing business in the State of New York" seems to invoke this standard, but they fail to allege any particular contacts between hi5 and New York.  The Complaint does not contain any allegations that hi5 conducts business in New York.  Nor does the Complaint identify any place of business, real property, employees, advertisement or solicitation, bank account, business license or registration, or commercial transaction that might be deemed to tie hi5 to New York, let alone constitute the sort of "continuous, permanent, and substantial" business conduct that is necessary for general

jurisdiction.  The type of contacts which courts have identified as the hallmarks of "doing business" in the state are entirely absent here.  Although on a motion to dismiss the Court must view all allegations in the light most favorable to the plaintiff and resolve all doubts in plaintiff's favor, *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993), here there simply are no factual allegations for the Court to consider.  Plaintiffs thus do not make the required prima facie showing that hi5 is subject to general jurisdiction in New York and, as detailed in the Affidavit of Ramu Yalamanchi, founder and CEO of hi5, Plaintiffs would be unable to do so because hi5 is not, in fact, conducting continuous, permanent, and substantial business in New York.  (*See* Yalamanchi Aff. ¶¶ 4 - 10.)

### 2.    Section 302

Section 302(a) of the C.P.L.R., New York's long-arm statute, describes distinct types of conduct or activity whereby a non-domiciliary can become subject to personal jurisdiction in New York.[2]  It authorizes jurisdiction over defendants "on a lesser showing of forum contacts than necessary under the 'doing business' standard of Section 301 if the cause of action arises from those contacts."  *Unique Indus.*, 2007 U.S. Dist. LEXIS 83725, at *10 (quoting *Overseas Media*, 407 F. Supp. 2d at 571).  While Plaintiffs' allegation that "Plaintiffs are suffering harm in this District" seems to be directed at Section 302(a)(3), *none* of the potentially applicable Section 302 standards provide a basis for jurisdiction over hi5 in this case.

### a.    Section 302(a)(1)

Section 302(a)(1) renders a non-domiciliary subject to personal jurisdiction when he "transacts any business within the state or contracts anywhere to supply goods or services in the state" and the cause of action at issue in the complaint arises from such act.  N.Y. C.P.L.R. §

---

[2] The other subsections of C.P.L.R. § 302 are concerned with circumstances—matrimonial cases, appearance in court, foreign defamation judgments—inapplicable here.

302(a)(1). The Second Circuit has held that a non-domiciliary "transacts business" under this

provision "when he purposefully avails [himself] of the privilege of conducting activities within

[New York], thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v.*

*Naughton*, 806 F.2d 361, 365 (2d Cir. 1986); *accord Warner Bros.*, 516 F. Supp. 2d at 266.

Courts in this District have described how "[c]ertain types of internet activity may satisfy the

prerequisites of § 302(a)(1)":

> [T]he Courts have identified a spectrum of cases involving a
> defendant's use of the internet. At one end are cases where the
> defendant makes information available on what is essentially a
> 'passive' web site. This use of the internet has been analogized to
> an advertisement in a nationally-available magazine or newspaper,
> and does not without more justify the exercise of jurisdiction over
> the defendant. At the other end of the spectrum are cases in which
> the defendant clearly does business over the internet, such as
> where it knowingly and repeatedly transmits computer files to
> customers in other states. Finally, occupying the middle ground
> are cases in which the defendant maintains an interactive website
> which permits the exchange of information between users in
> another state and the defendant, which depending on the level and
> nature of the exchange may be a basis for jurisdiction.

*Warner Bros.*, 516 F. Supp. 2d at 266 (quoting in part *Citigroup Inc. v. City Holding Co.*, 97 F.

Supp. 2d 549, 564 (S.D.N.Y. 2000)).

Several recent Southern District decisions have held the exercise of personal jurisdiction

to be improper because of the nature of activity conducted on interactive websites. In *Pitbull*

*Productions*, defendants operated a website with message boards on which users posted "images

with links to downloads of entire DVDs owned and produced" by the plaintiff. *Pitbull Prods.*,

2008 U.S. Dist. LEXIS 30633, at *2. The Court accepted defendants' argument that, because no

goods could be ordered or purchased over the website and because defendants did not advertise

the website, it was not commercial in nature, and held that "websites that are not of a commercial

nature and do not permit the purchase of products on-line are not sufficient to confer personal

jurisdiction pursuant to section 302(a)(1)."  *Id*. at *18 (quoting *ISI Brands, Inc. v. KCC Int'l, Inc.*, 458 F. Supp. 2d 81, 86 (E.D.N.Y. 2006)).   In *Realuyo v. Villa Abrille*, the Court held that neither the "sheer availability" nor the ability to "download at no cost" allegedly defamatory content on defendant's website was sufficient to satisfy Section 302(a)(1) or due process, even though plaintiffs had shown that the website had over 300 registered users in New York. *Realuyo v. Villa Abrille*, 2003 U.S. Dist. LEXIS 11529, at *18-20 (S.D.N.Y. 2003), *aff'd* 93 Fed. Appx. 297 (2d Cir. 2004) (unpublished).  The *Realuyo* Court further held that the presence of paid advertising links to other websites that sell merchandise does not establish the requisite commercial activity to justify long-arm jurisdiction where the claim arises out of website content other than those links themselves.  *Id*. at *21.  And in *Freeplay Music v. Cox*, defendant's "simulcast" internet broadcasts of radio content that allegedly infringed plaintiffs' copyrights were too "passive" to be considered transactions of business within the meaning of Section 302(a)(1).  *Freeplay*, 2005 U.S. Dist. LEXIS 12397, at *20.

By contrast, in other cases, courts have found certain websites to be sufficiently commercial in nature to satisfy Section 302(a)(1), including, for example, where New York customers were permitted to conduct transactions such as applying for loans on-line (*e.g.*, *Citigroup*, 97 F. Supp. 2d at 565) or ordering, purchasing, and paying for infringing products (*e.g.*, *Hsin Ten Enter. U.S. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000); *Student Advantage, Inc. v. Int'l Student Exch. Cards, Inc.*, 2000 U.S. Dist. LEXIS 13138, at *10-11 (S.D.N.Y. 2000); *Rubin v. City of New York*, 2007 U.S. Dist. LEXIS 23003 (S.D.N.Y. 2007); *Philip Morris USA Inc. v. Veles Ltd.*, 2007 U.S. Dist LEXIS 19780 (S.D.N.Y. 2007); *New Angle Pet Prods., Inc. v. MacWillie's Gold Prods., Inc.*, 2007 U.S. Dist. LEXIS 46952 (S.D.N.Y. 2007)).  These are not the types of activities that any hi5 user, in New York or otherwise, can

engage in on the website. (*See* Yalamanchi Aff. at ¶ 13.) Although hi5 receives revenue from displaying advertisements (by advertisers, not hi5 users) on the website, the website has not been "commercial" in the sense in which courts have used that term in analyzing personal jurisdiction. The website has not been used for the buying and selling of merchandise, or for other types of commercial transactions. And hi5 has never charged users any fees for using the website. Moreover, although hi5 receives revenues from third-party advertising displayed on the website, the claims at issue here arise from the allegedly copyright-infringing videos and not from third-party advertising. Thus, even if such advertisements *by third parties* were construed to be commercial activity *by hi5* for personal jurisdiction purposes, the advertising is not sufficiently related to the causes of action alleged in the Complaint to justify jurisdiction under Section 302(a)(1).

Further, Plaintiffs cannot satisfy Section 302(a)(1)'s requirement that the website activity be directed towards New York such that hi5 can be found to be availing itself of the protection of New York law. *See Citigroup*, 97 F. Supp. 2d at 566 ("It stretches that meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred."). In *Warner Brothers*, defendant website operators TVShows.org and TVNow.org collected membership fees from customers in exchange for "links to third-party providers of advanced file copying software." 516 F. Supp. 2d at 264, 267. The defendants also provided "instructions on illegal downloading" and technical support. The Court concluded that because "Plaintiffs have not averred any specific connection to customers in New York," the defendants were not subject to personal jurisdiction under Section 302(a)(1). *Id*. at 267 (rejecting as insufficient

"generalized" allegations, directed against all defendants without differentiation, that defendants had "continuing and ongoing business contacts with the state of New York").

As in *Warner Brothers*, Plaintiffs here have pleaded jurisdiction in a generalized way against all defendants, without differentiation, and have not alleged a single transaction that hi5 conducted in New York or with any New York resident or New York entity, much less any nexus between such transaction and the causes of action at issue in the Complaint. Nor could Plaintiffs make such allegations. Hi5 has never charged users any fees for membership or registration or using the website, and has never sold goods or services through the website. (Yalamanchi Aff. ¶ 13.) Further, none of the interaction between the website and its users is specifically targeted at residents of New York. (*Id.* ¶ 12.) While there may be advertising content on the website from third parties located in New York, none of the advertising was negotiated or sold through the website, and hi5 did not seek out advertisers on the basis of their residing in New York. (*Id.* ¶ 16.) Likewise, hi5 has from time to time entered into contracts with companies resident in New York but none of these contracts has any connection to this matter. (*Id.* ¶ 17.) Thus, hi5 cannot be subject to personal jurisdiction under Section 302(a)(1).

### b.    Section 302(a)(2)

Section 302(a)(2) renders one who commits a tortious act "within" the state subject to personal jurisdiction where the cause of action arises from that tortious act. This provision "reaches only tortious acts performed by a defendant who was physically present in New York when he performed the wrongful act." *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 28 (2d Cir. 1997); *accord ISI Brands*, 458 F. Supp. 2d at 89. It is well established that when websites display content that infringes another party's intellectual property rights, the tort is deemed to have been committed where the website was created or is maintained. *See Pitbull Prods.*, 2008 U.S. Dist. LEXIS 30633, at *19-20 ("[W]hen websites display infringing marks, the tort is

committed where the website is created and/or maintained.") (quoting *ISI Brands*, 458 F. Supp.

2d at 89-90); *Citigroup*, 97 F. Supp. 2d at 567 ("Although it is in the very nature of the Internet

that the allegedly infringing marks contained in these websites can be viewed anywhere, this

does not mean that the infringement occurred everywhere"); *Freeplay*, 2005 U.S. Dist. LEXIS

12397, at *23 (for allegedly infringing internet broadcasts, tort is committed where website is

created or maintained).  The website was created and is maintained in California; all of the

website's software code is located on computers in California.  (Yalamanchi Aff. ¶ 11.)  To the

extent the Complaint alleges hi5's involvement in copyright infringement or other tortious

conduct, such an infringement or tort would be deemed to have been committed in California,

not New York.  Therefore, Section 302(a)(2) cannot confer jurisdiction over the Company.

### c.    Section 302(a)(3)

The final potentially applicable New York long-arm provision deals with tortious acts

committed outside the state.  It extends specific jurisdiction over anyone who "commits a

tortious act without the state causing injury to person or property within the state" and:

> (i) regularly does or solicits business, or engages in any other
> persistent course of conduct, or derives substantial revenue from
> goods used or consumed or services rendered, in the state, or
>
> (ii) expects or should reasonably expect the act to have
> consequences in the state and derives substantial revenue from
> interstate or international commerce.

N.Y. C.P.L.R. § 302(a)(3).

The determination of whether a tortious act has caused injury within the state is a

technical one.  "An injury occurs in New York only if New York is the location of the original

event which caused the injury."  *Carroll v. Kahn*, 2003 U.S. Dist. LEXIS 17902, at *8 (N.D.N.Y.

2003) (quoting in part *Hermann v. Sharon Hosp., Inc.*, 135 A.D. 2d 682, 983 (2d Dep't 1987)).

The case law is clear that economic loss, on its own, does not constitute "injury to person or

property within the state." *Plunket v. Estate of Conan Doyle*, 2001 U.S. Dist. LEXIS 2001, at *9 (S.D.N.Y. 2001) ("the mere fact that the plaintiff resides in New York and therefore ultimately experiences a financial loss there is not a sufficient basis for jurisdiction under § 302(a)(3)"); *accord Ahava Food Corp. v. Donnelly*, 2002 U.S. Dist. LEXIS 23756, *10-11 (S.D.N.Y. 2002) (dismissing claims for lack of jurisdiction where plaintiff fails to allege lost customers located in New York or other "severe local impact" despite generalized claims of lost revenues); *Duncan v. Nu-Life, Inc.*, 1998 U.S. Dist. LEXIS 1729, at *17 (S.D.N.Y. 1998). In *Carroll*, the allegedly infringing showing of a film at a film festival in California did not establish personal jurisdiction over defendants in New York under Section 302(a)(3) because even though plaintiffs felt the final economic injury in New York, the injury "occurred" in California. 2003 U.S. Dist. LEXIS 17902, at *8. *See also Freeplay*, 2005 U.S. Dist. LEXIS 12397, at *24 (in commercial tort cases, "the place of injury will usually be located where the critical events associated with the dispute took place") (citing *Rolls-Royce Motors, Inc. v. Charles Schmitt & Co.*, 657 F. Supp. 1040, 1054 (S.D.N.Y. 1987)).

Where a complaint alleges that copyright infringement occurred on a website or over the Internet, courts have found the critical events to examine for determining personal jurisdiction are the unauthorized uses of the copyrighted work; the injury occurs where the use occurs. *See Freeplay*, 2005 U.S. Dist. LEXIS 12397, at *24-25 (dismissing for lack of personal jurisdiction where plaintiff failed to plead that unlicensed internet broadcasts of "took place in New York"). Here, as in *Freeplay*, there are no allegations that the allegedly infringing conduct took place in New York. The conclusion here thus should be the same as in *Freeplay*: the Complaint should be dismissed for lack of personal jurisdiction.

Even assuming, *arguendo*, that the prerequisites of Section 302(a)(3) are met, jurisdiction will not lie under this statute because hi5 does not satisfy either set of secondary requirements under Section 302(a)(3)(i) and (ii).

### (1)    Section 302(a)(3)(i)

As discussed *supra*, hi5 does not "regularly do business" in New York.[3] Even if hi5 has registered users who reside in New York, the Company cannot be deemed to transact business with them. The Company does not offer or sell goods or services to users or charge any fees. (Yalamanchi Aff. ¶ 13.) The website offers an opportunity for users to interact with one another; interaction between users and hi5 is minimal and generally limited to registration and the provision of technical support. (*Id*. ¶ 14.) Nor does the Company regularly solicit business in New York. Hi5 does not advertise the website to attract new users (*id*. ¶ 15), and the mere existence of a website accessible to New York residents does not constitute solicitation under Section 302(a)(3)(i). *Richtone Design Group, LLC v. Classical Pilates, Inc.*, 2006 U.S. Dist. LEXIS 64370, at *10 (S.D.N.Y. 2006). It is equally evident that hi5 does not derive substantial revenue from goods used or consumed, or services rendered, in New York. Hi5's predominant source of revenue is from sales of advertisements displayed on the website. (Yalamanchi Aff. ¶ 3.) These ads are not "goods used or consumed" or "services rendered." In any event, the website on which the ads appear is not "in" New York; hi5's servers are located in California. (*Id*. ¶ 11.)

Plaintiffs have not alleged (and cannot allege) that hi5 regularly does business in New York, regularly solicits business in New York, or gains substantial revenue from goods used or

---

[3] The "doing business" requirement of Section 302(a)(3)(i) is an intermediate test; it "does not require the quantity of New York contacts that is necessary to obtain general jurisdiction under the "doing business" test of C.P.L.R. 301…[but] does require something more than the 'one shot' single business transaction described in C.P.L.R. 302(a)(1)." *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997).

services rendered in New York.  *See Pitbull Prods.*, 2008 U.S. Dist. LEXIS 30633, at *22 ("conclusory" allegation that defendants "regularly solicits business, or engages in any other course of conduct…in the state of New York" fails to satisfy 302(a)(3)(i)).  Their bald allegations are insufficient and, as discussed above, no amount of repleading would bring hi5 under the purview of Section 302(a)(3)(i).  Thus, Section 302(a)(3)(i) cannot form the basis for the exercise of personal jurisdiction.

**(2)    Section 302(a)(3)(ii)**

The Second Circuit has instructed that "[t]he test of whether a defendant expects or should reasonably expect his act to have consequences within the State is an objective rather than subjective one."  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999).  Thus, "purposeful availment of the benefits of the laws of New York such that that the defendant may reasonably anticipate being haled into New York court is required."  *Id.*  Applying this test, one court found that because, among other reasons, the defendant website operator "ha[d] never sold any goods or services over the Website and [did] not advertise its Website, it [was] not reasonably foreseeable that [defendant] would be subjected to New York jurisdiction."  *Pitbull Productions*, 2008 U.S. Dist. LEXIS 30633, at *24.

Hi5 did not avail itself of the protection of New York laws by creating and maintaining the website.  All of that conduct took place in California.  (Yalamanchi Aff. ¶ 11.)  Nor does the website's sheer availability to viewers or users in New York, free of charge, constitute activity sufficiently "directed" towards New York residents that hi5 should have anticipated being haled into court here.  Likewise, because hi5, like the defendant in *Pitbull Productions*, does not sell goods or services over the website or advertise the website to New York residents (or to anyone else) (*Id.* ¶ 13), it could not have reasonably foreseen being subject to the jurisdiction of courts in New York.

* * * * *

For the foregoing reasons, Plaintiffs have not adequately alleged and cannot demonstrate that hi5 is subject to personal jurisdiction under the laws of New York.  Therefore, this Court does not have personal jurisdiction over hi5 in this case.

### B.    The exercise of jurisdiction over hi5 would violate principles of due process

Even if the Complaint properly alleged personal jurisdiction over hi5, it would nonetheless violate due process for the Court to exercise jurisdiction in this matter.  The Constitution's Due Process Clause requires "minimum contacts" between a forum state and a foreign defendant "such that the maintenance of the suit does not offend traditional notions of fair play and justice."  *Chew v. Dietrich*, 143 F.3d 24, 28 (2d Cir. 1998).  The Second Circuit has further explained:

> To establish the minimum contacts necessary to justify specific jurisdiction, the plaintiff first must show that his claim arises out of or relates to defendant's contacts with the forum state.  The plaintiffs must also show that the defendant purposefully availed himself of the privilege of doing business in the forum state and that the defendant could foresee being haled into court there.

*Id.*

While sometimes the in-state effects of a foreign defendant's out-of-state tortious conduct will satisfy the minimum contacts analysis, this is so only when the defendant has "expressly aimed" his actions at the forum state.  *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) (when defendants "expressly aimed" "intentional, and allegedly tortious actions" at California, they reasonably anticipated being haled into court there).  A case should be dismissed where the claims do not "arise out of or relate to any activities the defendants purposefully directed to the residents of New York."  *Realuyo*, 2003 U.S. Dist. LEXIS 11529, at *24.  The *Realuyo* Court adopted the Fourth Circuit's formulation that the "application of *Calder* in the internet context

requires proof that the out-of-state defendant's internet activity is expressly targeted at or directed to the forum state." *Id*. at 30-31 (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262-63 (4th Cir. 2002)). *See also K.C.P.L., Inc. v. Nash*, 1998 U.S. Dist. LEXIS 18464, at *16 (S.D.N.Y. 1998) ("absent allegations that the defendant had actively sought to encourage New Yorkers to access his site, or that he conducted business in New York, defendant had insufficient contacts with the forum to satisfy due process").

Hi5 does not intentionally target New York residents or address any content expressly to them. (Yalamanchi Aff. ¶ 12.) Hi5's minimal interactions with its users are conducted without regard to the users' self-identified geographic location. And while New York companies may have advertised on the website, such advertisements are too distantly related to the claims in the Complaint to justify the exercise of personal jurisdiction. (*Id*. ¶ 16.) Overall, the relationship between hi5 and New York State is extremely limited and there is no connection between hi5's limited commercial contacts with New York and the subject matter of the litigation. Therefore, the exercise of personal jurisdiction over hi5 by the Southern District of New York would not comport with notions of fair play and justice, and would violate due process.

## II.    VENUE IN NEW YORK IS IMPROPER

### A.    The Complaint should be dismissed for improper venue

The Complaint should also be dismissed under Rule 12(b)(3) on the ground of improper venue. Venue in federal copyright cases is governed exclusively by 28 U.S.C. § 1400(a), which states that venue is proper "in the district in which the defendant or his agent resides or may be found." *AEC One Stop Group v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004). A corporate defendant "resides," for purposes of Section 1400(a), "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. § 1391(c). Thus, the legal standard for proper venue in copyright cases is substantially

similar to the legal standard for personal jurisdiction under New York's long-arm statute (and due process). *See AEC One Stop*, 326 F. Supp. 2d at 528. For all of the reasons discussed in Section I, *supra*, hi5 is not subject to personal jurisdiction in the Southern District of New York, and venue here is thus improper. The Company respectfully requests that the Complaint be dismissed on this ground.

**B.    In the alternative, this case should be transferred to the Northern District of California**

In the event the Court denies hi5's motion to dismiss for lack of personal jurisdiction and improper venue, hi5 requests that this case be transferred to the Northern District of California. Under 28 U.S.C. § 1404, a court may transfer a civil action to any other district where the case might have been brought, if the transfer would serve "the convenience of the parties and witnesses" and "the interests of justice." Further, 28 U.S.C. § 1406 provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A transfer is appropriate where the action could have been brought in the proposed transferee district, and the balance of convenience and the interests of justice weigh in favor of the transfer. *Kwik Goal, Ltd. v. Youth Sports Publishing Inc.*, 2006 U.S. Dist. LEXIS 34460, at *3 (S.D.N.Y. 2006). The factors to be balanced include "(1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the location of relevant documents and relative ease of access to sources of proof; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the forum's familiarity with governing law; (7) the relative financial means of the parties; (8) the weight afforded plaintiff's choice of forum; and (9) trial efficiency and the interests of justice generally." *AEC One Stop*, 326 F. Supp. 2d at 528. As a preliminary matter, it is alleged in the Complaint and undisputed here that both named

defendants, hi5 and VideoEgg, have their principal places of business in San Francisco, located within the Northern District of California, and are amenable to suit there.  This action thus could have been brought there.  With respect to the nine factors, the facts here militate in favor of a transfer to the Northern District of California.

>### 1.    Convenience of witnesses

The convenience of key party and non-party witnesses "is usually the most important consideration in deciding a motion to transfer venue."  *AEC One Stop*, 326 F. Supp. 2d at 529.  In an action on claims of copyright infringement, the key witnesses are generally those involved in the design and production of the accused items.  *Id*.  When the allegedly infringing material is sold via or displayed on a website, the key witnesses will be those who designed the website as well as those who made decisions concerning the design, content, and marketing of the website.

The witnesses who can best testify to the design, content, function, and marketing (or non-marketing) of the website are hi5 employees, and they are all in San Francisco.  (Yalamanchi Aff. ¶¶ 11, 18.)  Similarly, the design and function of the VideoEgg technology will be relevant and thus witnesses representing VideoEgg will likely be required to testify.  Like hi5, VideoEgg has its principal place of business in San Francisco (Cmplt. ¶ 24), and it is likely that key witnesses from VideoEgg also live and work in the Northern District of California.  It would be a significant inconvenience to require these witnesses to travel across the country to New York.  *Kwik Goal*, 2006 U.S. Dist. LEXIS 34460, at *10.

Further, it not clear there are any key witnesses located in the current forum district.  The Complaint does not identify any New York resident involved in the design or maintenance of the website.  It does not identify any New York resident involved in the design of VideoEgg's software.  Nor does it identify any New York resident who uploaded or displayed any allegedly infringing video.

These facts, taken together, strongly favor the transfer of this case to the Northern District of California.

## 2.    Convenience of the parties

The convenience of the parties also weighs in favor of transfer.  Hi5 has no offices, employees, or other presence in the Southern District of New York; rather, its office and its employees are in the Northern District of California.  (Yalamanchi Aff. ¶ 11.)  Defendant VideoEgg also has its principal place of business in the Northern District of California, and is not alleged to have any presence in the Southern District of New York.  (Cmplt. ¶ 24.)

Additionally, three of the twelve plaintiff entities are California corporations (Cmplt. ¶¶ 10, 16, 17) and one has its principal place of business in Los Angeles (*Id.* ¶ 10).  Eleven of the plaintiffs are registered to do business in California.  (*See* Affirmation of Emma Terrell ("Terrell Aff.") ¶¶ 2-13.)  Two prominent record companies that are Plaintiffs in this case have actually litigated copyright cases in California in the recent past.  Indeed, they were plaintiffs in the long-pending and well-known Napster and Grokster cases.  *A&M Records, Inc. et al v. Napster, Inc.*, 3:99-cv-05183-MHP (N.D. Cal., filed Dec. 6, 1999) (Plaintiffs Capitol Records and Virgin Records America); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 2:01-cv-08541-SVW-FMO (C.D. Cal., filed Oct. 2, 2001) (Plaintiff Capitol Records).   Plaintiff Capitol Records has brought multiple federal actions in the Northern District of California, including eleven currently active copyright actions in which it is a plaintiff.  (Terrell Aff. ¶ 14.)  Plaintiff Virgin Records America is also a plaintiff in five currently active copyright actions in the Northern District of California.  (*Id.*)  At a minimum, it does not appear to be a hardship for Plaintiffs to conduct business and to litigate in California, while litigating in New York is considerably inconvenient for hi5.  This factor therefore favors transfer.

### 3.    Locus of operative facts

The operative facts in an infringement case "usually concern the design, development and production" of the accused content. *Kwik Goal*, 2006 U.S. Dist. LEXIS 34460, at *8 (quoting in part *AEC One Stop*, 326 F. Supp. 2d at 530). In *Kwik Goal*, this Court found a transfer of venue appropriate where, among other factors, "the allegedly infringing website was created solely by individuals who reside in California" and "decisions with regard to the design and marketing" of allegedly infringing products were made at defendant's headquarters in California. *Id*. These same facts apply here with equal, if not greater, force, especially considering that unlike in *Kwik Goal*, Plaintiffs here do not allege a single sale or other transaction related to the allegedly infringing videos to have taken place in this District. This factor thus favors transfer.

### 4.    Location of documents and other evidence

At this early stage of litigation, it is difficult to anticipate the type or volume of documents or other evidence that will be called for and produced in this case. However, courts in this District have observed that "in infringement cases, the bulk of the relevant evidence usually comes from the accused infringer." *AEC One Step*, 326 F. Supp. at 530; *Boreal Laser, Inc. v. Coherent, Inc.*, 1992 U.S. Dist. LEXIS 276, at *5 (S.D.N.Y. 1992). Because all of hi5's documents, records, and electronic storage material are located in the Northern District of California (Yalamanchi Aff. ¶ 19), and because it is likely that VideoEgg's documents, records, and electronic storage material will be as well, this factor also favors transfer.

### 5.    Witnesses within the subpoena power of this Court

No party has yet identified any third-party witness over whom the subpoena power of this or any other Court could be exercised. However, considering that the named Defendants both have their principal places of business in the Northern District of California, in the event that one Defendant is dismissed from or settles this case, it would be important for the remaining

Defendant to have the ability to summon the officers and employees of the other (previous) Defendant into court. Further, should any officer or employee leave either of the Defendant companies during the pendency of this suit or the testimony of any former employee be required, they would also be more likely to testify in their home district than in New York, and more likely subject to subpoena there should they not prove willing. This factor accordingly weighs in favor of transfer.

### 6.    Familiarity of transferee forum with applicable law

This factor should be considered neutral, as the issue of federal copyright law is one in which both courts are well versed. *AEC One Stop*, 326 F. Supp. 2d at 531. Plaintiffs' assertion of New York state law claims does not alter this analysis because "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." *Kwik Goal*, 2006 U.S. Dist. LEXIS 34460, at *12.

### 7.    Relative means of the parties

While hi5 does not contend that it would be financially unable to litigate in this forum, doing so would be a substantial hardship for the company, which is a small private start-up company in business for less than six years. (*See* Yalamanchi Aff. ¶ 2.) By contrast, while financial information for each individual Plaintiff does not appear to be publicly available, the Rule 7.1 Statement filed by Plaintiffs in this case identifies their common ultimate corporate parent as Maltby Investments, Ltd., the company which in 2007 acquired the London-based record company EMI Group, of which all Plaintiffs are subsidiaries. (*See* Rule 7.1 Statement.) *See also* EMI Group 2007 Annual Report, located at www.emigroup.com/Financial/Default.htm (last accessed July 27, 2008). In 2007, EMI Group reported annual revenues of £1.75 billion (approximately $3.5 billion). *See* EMI Group 2007 Annual Report. Plaintiffs are surely financially capable of litigating in the Northern District of California (as they have litigated such

matters in the past and continue to do today), and the hardship to hi5 of litigating this matter in New York would far outweigh the burden on the EMI Group affiliates of litigating in California.

### 8.     Plaintiffs' choice of forum

While a plaintiff's choice of forum is entitled to significant weight, "courts have accorded less deference to a plaintiff's choice of forum if the case lacks material or significant contacts with the forum state." *Kwik Goal*, 2006 U.S. Dist. LEXIS 34460, at *6. As in *Kwik Goal*, here "neither the defendant, its potential witnesses, nor any of their employees reside in the SDNY." *Id*. (*See also* Yalamanchi Aff. ¶¶ 11, 18.) While at least certain Plaintiffs do appear to reside in this District (three of the twelve Plaintiffs are California companies), there are no connections to the Southern District of New York besides their mere residence alleged in the Complaint. Accordingly, this factor should not be determinative of the decision to transfer this case.

### 9.     Trial efficiency and general interests of justice

Hi5 does not contend that this matter will overburden the dockets of either the Southern District of New York or the Northern District of California, and surely an efficient trial could be had in either forum. However, the interests of justice strongly favor a transfer because of the overwhelming majority of witnesses and evidence located in the Northern District of California and the locus of operative facts in that District. If the Complaint against hi5 is not dismissed for lack of personal jurisdiction or improper venue, the Company requests that this case be transferred to the Northern District of California.

**CONCLUSION**

For the foregoing reasons, the Complaint, as against hi5, should be dismissed because this Court lacks personal jurisdiction over hi5 and because venue in the Southern District of New York is improper.  In the alternative, if the motion to dismiss is denied, hi5 respectfully moves this Court for a transfer of venue to the Northern District of California.


Dated: July 31, 2008                                    Respectfully submitted,
                                                        COOLEY GODWARD KRONISH LLP


                                                            /s/ Janet L. Cullum_____
                                                        Janet L. Cullum (JLC-2083)
                                                        Emma Terrell (ET-1414)
                                                        1114 Avenue of the Americas
                                                        New York, NY 10036-7798
                                                        Phone:      (212) 479-6000
                                                        Fax:        (212) 479-6275

                                                        *Attorneys for Defendant*
                                                        *hi5 Networks, Inc*.