UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- X
Capitol Records, LLC; Caroline Records, Inc.; :
Virgin Records America, Inc.; EMI Blackwood
Music, Inc.; EMI April Music, Inc.; EMI Full :
Keel Music, Inc.; EMI Virgin Music, Inc.; EMI
Robbins Catalog, Inc.; EMI Waterford Music, :
Inc.; EMI Grove Park Music, Inc.; Colgems-
EMI Music, Inc.; and EMI Virgin Songs, Inc., :

        Plaintiffs, :

  vs. :

VideoEgg, Inc.; hi5 Networks, Inc.; and Does :
1-10,

        Defendants. :
------------------------------------- X

INDEX No. 08 CV 5831 (HB)
ECF CASE

**REPLY MEMORANDUM OF LAW IN SUPPORT OF HI5 NETWORKS'
MOTION TO DISMISS OR, ALTERNATIVELY, TO TRANSFER VENUE**

## TABLE OF CONTENTS

Page

I. C.P.L.R. § 302(a)(1) DOES NOT PROVIDE A BASIS FOR JURISDICTION OVER HI5 ................................................................................................................. 1

    A. Plaintiffs fail to establish a sufficient connection between hi5's conduct and New York ................................................................................................ 1

    B. Plaintiffs fail to show their claims "arise out of" the identified transactions ........ 5

II. C.P.L.R. § 302(a)(3)(ii) DOES NOT PROVIDE A BASIS FOR JURISDICTION OVER HI5 ................................................................................................................. 6

III. JURISDICTIONAL DISCOVERY IS NOT WARRANTED .......................................... 7

IV. IF THE COURT DENIES HI5'S MOTION TO DISMISS, TRANSFER IS APPROPRIATE ................................................................................................................. 8

V. CONCLUSION ................................................................................................................. 10

In their opposition, Plaintiffs attempt to supplement the conclusory allegations of the Complaint, which are plainly insufficient to demonstrate personal jurisdiction over hi5, with yet more unsupported statements, many of which are entirely speculative or irrelevant to the jurisdictional analysis. Plaintiffs' inflammatory rhetoric is no substitute for a factual showing upon which this Court may rest a jurisdictional finding. Plaintiffs have added no facts to the record which support either jurisdiction over hi5 or venue in this district, and Plaintiffs' original pleading remains insufficient to establish a *prima facie* showing. Further, Plaintiffs have not introduced sufficient evidence to counterbalance the numerous factors which favor transfer to the Northern District of California in the event the Court denies hi5's motion to dismiss.

## I.     C.P.L.R. § 302(a)(1) DOES NOT PROVIDE A BASIS FOR JURISDICTION OVER HI5

New York's long-arm statue authorizes the exercise of personal jurisdiction over a non-domiciliary when he "transacts any business within the state or contracts anywhere to supply goods or services in the state" and the cause of action at issue in the complaint arises from such act. N.Y. C.P.L.R. § 302(a)(1). Plaintiffs' § 302(a)(1) arguments fail because the conduct they point to is either not specifically directed to New York or, to the extent the conduct is connected to New York, not sufficiently related to the claims at issue to support jurisdiction.

### A.     Plaintiffs fail to establish a sufficient connection between hi5's conduct and New York

Plaintiffs state that hi5 "offered the [allegedly infringing] videos for transmission, distribution, and public display to *all* of its users," including those in New York. (Opposition of Plaintiffs to Motion to Dismiss, or, Alternatively, to Transfer Venue of Defendant hi5 Networks, Inc. 10 ("Pl. Opp.").) Hi5 does not concede that it conducted these activities, and Plaintiffs do not adequately allege that such transmission, distribution, or public display took place in New York or was specifically targeted to New York residents in a way that differentiated them from

1

visitors to hi5's website in any other location. In *Realuyo*, the defendant website had over 300 registered users in New York and offered an allegedly defamatory article for free download, but "sheer availability" of accused content to website users in New York or anywhere in the world was insufficient to confer jurisdiction. *Realuyo v. Villa Abrille*, 2003 U.S. Dist. LEXIS 11529, at *18-20 (S.D.N.Y. 2003), *aff'd*, 93 Fed. Appx. 297 (2d Cir. 2004) (unpublished). In *Warner Bros.*, defendant website operator was dismissed for lack of personal jurisdiction because plaintiffs failed to aver "any specific connection to customers in New York." *Warner Bros. Ent. Inc. v. Ideal World Direct*, 516 F. Supp. 2d 261, 267 (S.D.N.Y. 2007). And in *Freeplay*, defendant's broadcasts of allegedly infringing songs over the Internet, though "capable of reaching customers in [New York]," was insufficient to confer jurisdiction without evidence or allegation that "commercial activity in that state actually occurred or was actively sought." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 2005 U.S. Dist. LEXIS 12397, at *20 (S.D.N.Y. 2005).

The lack of specific facts tying hi5's alleged conduct to New York is fatal to Plaintiffs' § 302(a)(1) argument. Hi5's services were directed to all users in all regions equally; if Plaintiffs' view were accepted, it would make hi5 subject to jurisdiction in every state where the website was available, a position roundly rejected in this district. *See Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) ("it is in the very nature of the internet that the allegedly infringing marks contained in these web sites can be viewed anywhere, this does not mean that the infringement occurred everywhere").

Likewise, the allegation that certain videos were viewed "thousands of times by visitors to Hi5 (some of whom *likely* reside in New York)" (Pl. Opp. 6 (emphasis added)) is too speculative and unspecific to provide a basis for the exercise of jurisdiction, even if the mere viewing of allegedly infringing content by a New York resident constituted a transaction of

2

business, which hi5 also disputes. Speculation about "likely" contacts with the forum are not enough. *ISI Brands, Inc. v. KCC International, Inc.*, 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006) (plaintiff's statement that "it seems probable that . . . orders were also shipped" to New York was not a "fact" sufficient to establish jurisdiction).

To the extent Plaintiffs argue that the mere viewing of allegedly infringing content by website visitors in New York confers jurisdiction, which hi5 does not concede, Plaintiffs may not rely on their own viewing of content on hi5's website as part of an investigation in preparation for litigation. *See ISI Brands*, 458 F. Supp. 2d at 89 (orders placed by plaintiff and counsel and shipped by defendant to New York does not confer jurisdiction); *Stewart v. Vista Point Verlag & Ringier Pub. GmbH*, 2000 U.S. Dist. LEXIS 14236, at *11 (S.D.N.Y. 2000), *aff'd*, 20 Fed. Appx. 91 (2d Cir. 2001) (order placed by New York resident plaintiff and accepted by defendant does not confer jurisdiction); *Chloe v. Queen Bee of Beverly Hills, LLC*, 2008 U.S. Dist. LEXIS 58651, at *11-15 (S.D.N.Y. 2008) (reviewing copyright, trademark, and patent infringement cases and concluding that most courts have held there is no basis for jurisdiction when plaintiff knowingly solicits or initiates the interaction).

Nor is it a basis for jurisdiction that New York and Brooklyn appeared as two of twenty "top cities" on certain hi5 webpages. (Pl. Opp. 12.) This information was displayed to all users in the United States, Canada, Greenland, and St. Pierre and Miquelon, without regard to where any particular user was located. (Supp. Aff. of Ramu Yalamanchi ¶ 4.) And even if such a listing did constitute solicitation of business, which hi5 does not concede, "mere solicitation of business within the state does not constitute the transaction of business within the state [sufficient to satisfy § 302(a)(1)] absent some other New York-directed activities." *Girl Scouts v. Steir*, 102 Fed. Appx. 217, 219 (2d Cir. 2004).

3

Plaintiffs' carefully crafted statement that "***hundreds of thousands*** of [hi5] users, including users who uploaded and viewed infringing content, are located in New York" (Pl. Opp. 1) is highly misleading. It is true that Plaintiffs proffered evidence that thousands of registered users (of more than 80+ million worldwide) have self-identified as New York residents. But Plaintiffs identify only *two* website users who self-identified as having been residents of New York at one point in time and who also uploaded a total of *three* allegedly infringing videos at various points in time. (Pl. Opp. 6, 11.) And Plaintiffs offer no competent or convincing evidence linking the three videos to conduct in New York. Plaintiffs admit that the screenshots purporting to show infringing content on hi5's website were taken "during the course of" investigations by Plaintiffs in "late 2007 and early 2008." (Declaration of Alasdair McMullan at ¶¶ 8, 10 ("McMullan Dec."); Declaration of Michael Abitbol at ¶¶ 6, 8 ("Abitbol Dec.").) The screenshots for the three videos indicate that they were uploaded in late 2006 and early 2007. (Declaration of Marc E. Mayer, Exs. 5, 6 ("Mayer Dec.").) But the screenshots showing the self-declared residence of the two individuals who purportedly uploaded these videos were not taken until August 8, 2008 (the profile of user "Dark Angel" indicates that it is a "cached" version representing what the webpage looked like on June 20, 2008). (*Id.*) This evidence does not show that the website users were residents of New York, or physically located in New York, when they uploaded the accused videos. At most, it shows that the users claimed to be residents of New York in June or August 2008, 14 to 21 months after the uploading occurred.[1]

---

[1] Plaintiffs' casual approach to the facts is further evidenced by their representation—without citation or evidentiary support—that "*after this lawsuit was filed*, Hi5 attempted to remove the infringing content, and appears to have removed all video functionality." (Pl. Opp. 7 n.4 (emphasis added).) Contrary to this representation, the video functionality at issue in this case was terminated *before* the lawsuit was filed. (Supp. Aff. of Ramu Yalamanchi ¶ 3.) Similarly, Plaintiffs' Complaint uses the present tense to describe the video functionality (*e.g.*, Complaint

4

**B.     Plaintiffs fail to show their claims "arise out of" the identified transactions**

A single transaction may sometimes be sufficient for personal jurisdiction but Plaintiffs fail to recognize that § 302(a)(1) applies only when the claims at issue actually *arise out of that transaction*. *Opticare Acquisition Corp. v. Castillo*, 806 N.Y.S.2d 84, 91 (N.Y. App. Div. 2005) ("[A] transaction of business in New York, standing alone, is not enough to sustain personal jurisdiction under CPLR 302(a)(1). . . . As the Court of Appeals has instructed, '[e]ssential to the maintenance of a suit against a nondomiciliary' under CPLR 302(a)(1) is 'the existence of some articulable nexus between the business transacted and the cause of action sued upon.'") (quoting *McGowan v. Smith*, 52 N.Y. 268, 272 (N.Y. 1981)).

Plaintiffs assert that hi5 engaged in certain transactions, but Plaintiffs fail to connect these alleged transactions to the claims in the Complaint. For instance, Plaintiffs state that the advertising by third parties on hi5's website is "directly related" to their claims, but proffer only generalized and unsubstantiated argument that hi5's revenue *must* be tied to the size of its user base which, in turn, *must* be tied to the availability of allegedly infringing content. Even assuming for purposes of argument that there is, in general, a nexus between advertising revenue and size of user base, and that hi5 had some users in New York, these facts do not identify any particular New York-based advertising or other transaction out of which the claims at issue arise. Further, Plaintiffs' statement that hi5 uses "demographic targeting" to direct ads to "local residents" is not supported by Plaintiffs' proffered evidence, which refers to the demographics of age and gender only. (Mayer Dec. Ex. 9.) Hi5 has proffered evidence that it does not target New York residents or direct content specifically toward them (Aff. of Ramu Yalamanchi ¶ 12 (Docket No. 19)) and Plaintiffs have not presented any contradictory evidence.

---

¶¶ 37-43) and seeks injunctive relief on the ground of continuing irreparable injury (*id.* ¶¶ 50, 57, 65, 73, 82, 91, 98, 106), leaving the erroneous impression that the conduct is continuing.

Similarly, Plaintiffs point to the Terms of Service which all hi5 users must "click through" in order to register. Plaintiffs argue that the contracts thus formed confer jurisdiction over hi5 in New York. But the claims asserted here are for copyright infringement, not that hi5 breached any obligation under the Terms of Service. These contracts with users are wholly irrelevant to the jurisdictional analysis in this case.

Plaintiffs thus have added no facts to overcome their initial inadequate pleading, and personal jurisdiction cannot be established under § 302(a)(1).

## II.    C.P.L.R. § 302(a)(3)(ii) DOES NOT PROVIDE A BASIS FOR JURISDICTION OVER HI5

Section 302(a)(3)(ii) confers specific jurisdiction over anyone who "commits a tortious act without the state causing injury to person or property within the state" and "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." N.Y. C.P.L.R. § 302(a)(3)(ii). A defendant may reasonably expect his actions to have consequences in New York when he purposefully avails himself of the protections of the state's laws. *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 241 (2d Cir. 1999). Hi5 has not done so. Hi5's interactions with its users were very limited and independent of any given user's geographic location. The preponderance of cases dealing with alleged intellectual property violations by website operators have held that a defendant may be haled into a New York court only when that defendant operates an interactive website *and* has additional relevant forum contacts, such as an actual or attempted sale of merchandise to a New York customer, or targeted advertising directed at New York residents. *See Chloe*, 2008 U.S. Dist. LEXIS 58651, at *22-24 (collecting cases). Hi5 has never sold merchandise over the website. And Plaintiffs cannot point to any solicitation specifically directed at New York residents; the mere mention of the names of cities in New York, along with 18 other American and Canadian cities, is not enough. Nor can Plaintiffs point to any transmission of infringing

6

content specifically targeted to New York residents. Making content available online to anyone with an Internet connection does not create jurisdiction in every place the content is viewed.

Significantly, in the months between the time Plaintiffs claim to have begun their investigation of hi5 in "late 2007" and the filing of the Complaint, Plaintiffs never took any action to put hi5 on notice of their claims. Thus, although it is common practice on the Internet to provide a "take-down notice" when infringement is suspected, and although hi5's Terms of Service have an express procedure for submitting take-down notices (Mayer Dec. Ex. 7, at 28), Plaintiffs never sent such a notice (Supp. Aff. of Ramu Yalamanchi ¶ 2). In the absence of such notice, it is unreasonable to infer that hi5 knew or should have known that Plaintiffs were suffering harm in New York.[2]

Thus, personal jurisdiction cannot be established under § 302(a)(3)(ii).

### III.   JURISDICTIONAL DISCOVERY IS NOT WARRANTED

Where, as here, plaintiffs have done nothing more than make "conclusory, non-fact-specific" jurisdictional allegations, the Court can and should dismiss the case without granting jurisdictional discovery. *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998). While something less than a prima facie showing of jurisdiction may justify jurisdictional

---

[2] Plaintiffs repeatedly state, with no citation to supporting evidence, that their copyrights are "based in," "owned in," "held in," or "located in" New York. (*See* Pl. Opp. 2 ("Plaintiffs, which are headquartered and own copyrights in New York"); *id.* at 14 ("Plaintiffs and their property within New York, which is where the allegedly infringed intellectual property is held" (internal quotation marks omitted)); *id.* ("the plaintiffs (and their intellectual property) are based in New York"); *id.* at 14-15 ("Plaintiffs' copyrights are owned, licensed and exploited in New York"); *id.* at 17 ("Plaintiffs and their copyrights in New York").) Contrary to Plaintiffs unsupported representations, at least 46 of the copyrighted works put at issue by Plaintiffs in this case are ***officially registered to Plaintiffs in their California offices***. (*See* Supp. Affirmation of Emma Terrell ¶¶ 2-3 & Ex. A.) Indeed, for each of these works, the U.S. Copyright Office registration lists one of the Plaintiffs as the copyright claimant with a California address, provides the California address where correspondence about the copyright application should be sent, and provides the California address where the copyright registration certificate is to be mailed. (*Id.*)

7

discovery, "plaintiff must first make a threshold showing that there is some basis for the assertion of jurisdiction. Plaintiff must, at least, allege facts that would support a colorable claim of jurisdiction." *Daval Steel Prods. v. M.V. Juraj Dalmatinac*, 718 F. Supp. 159, 162 n.4 (S.D.N.Y. 1989) (denying motion for jurisdictional discovery and dismissing complaint pursuant to Fed. R. Civ. P. 12(b)(2)). *Accord Steinberg v. Bombardier Trust (Canada)*, 2008 U.S. Dist. LEXIS 52060 (S.D.N.Y. 2008) (same); *Realuyo*, 2003 U.S. Dist. LEXIS 11529, at *32 n.4 (same); *Kiobel v. Royal Dutch Petroleum Co.*, 2008 U.S. Dist. LEXIS 16592 (S.D.N.Y. 2008) (same and collecting cases). *See also Hollins v. U.S. Tennis Assoc.*, 469 F. Supp. 2d 67, 71-72 (E.D.N.Y. 2006) (courts are entitled to distinguish "between allegations that are 'insufficiently developed' warranting discovery and those that are 'spare' and 'conclusory' requiring dismissal"). The "mere commencement of a lawsuit, without the support of a threshold showing of jurisdictional prerequisites" does not entitle a plaintiff to use the processes and resources of the courts to "attempt to find support for having commenced the litigation." *Steinberg*, 2008 U.S. Dist. LEXIS 52060, at *6. Plaintiffs have failed to make the required threshold showing to support jurisdiction and the Complaint should be dismissed without engaging in discovery.

IV.    **IF THE COURT DENIES HI5'S MOTION TO DISMISS, TRANSFER IS APPROPRIATE**

Hi5's motion to transfer venue is based upon a far more compelling set of circumstances than Plaintiffs acknowledge when they accuse hi5 of merely attempting to shift inconvenience from Defendants to Plaintiffs. (Pl. Opp. 22.) Courts have routinely held that individuals involved in the design and production of a product or service allegedly responsible for intellectual property infringement are key witnesses. *See, e.g.*, *AEC One Stop Group v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004); *accord Kwik Goal, Ltd. v. Youth Sports Publishing Inc.*, 2006 U.S. Dist. LEXIS 34460, at *4 (S.D.N.Y. 2006). Certain employees and former employees of defendants hi5 and VideoEgg will be key witnesses in this case. Hi5's

employees are located in Northern California, where the VideoEgg personnel relevant to this matter also are based, and it would unquestionably be more convenient for defendants' witnesses to testify there.  Further, the key witnesses of co-defendant VideoEgg, who are ***not*** under hi5's control, would be beyond the subpoena power of this Court in the event of a settlement.  Likewise, any former employees of hi5 or VideoEgg in Northern California would be beyond the reach of this Court's compulsory process.  The ability to compel live testimony from these witnesses is an "important consideration in transfer motions." *Int'l Sec. Ex. LLC v. Chicago Board Options Ex. Inc.*, 2007 U.S. Dist. LEXIS 38427, at *11 (S.D.N.Y. 2007) (quoting *Brasseler USA Dental, L.L.C. v. Discus Dental, Inc.*, 2005 U.S. Dist. LEXIS 14918, at *4 (S.D.N.Y. 2005) *and Arrow Elecs. v. Ducommun, Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989)).

Plaintiffs overstate the importance attaching to their choice of forum.  "The idea behind § 1404(a) is that where a 'civil action' to vindicate a wrong—however brought in a court—presents issues and requires witnesses that make one District Court more convenient than another, the trial judge can, after findings, transfer the whole action to the more convenient court." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).  Plaintiffs' strategic quotation of *Van Dusen* (Pl. Opp. 22) makes it appear as though the Court eviscerated § 1404(a) by removing "convenience" as a justification.  In fact, the Court reiterated that convenience of parties, witnesses, and courts is the overarching statutory purpose. *Van Dusen*, 376 U.S. at 616.

Finally, the fact that "VideoEgg has appeared in this action and has not sought transfer" (Pl. Opp. 25) and consents to personal jurisdiction in this Court (VideoEgg Answer ¶ 6) does not preclude the Court from granting hi5's motion for transfer.  It is undisputed that VideoEgg can be sued in the alternative forum and has not objected to hi5's transfer request; therefore, there is no reason why the cases against the two defendants need to be severed.  *See* 17 Moore's Federal

Practice § 111.12 (in action involving multiple defendants, transfer is available if venue and jurisdiction would have been proper in proposed transferee court when action was filed). Further, the law does not preclude a transfer of venue simply because one or more defendants have waived jurisdictional challenges or affirmatively consented to jurisdiction. "The power of a District Court under § 1404(a) to transfer action is made not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960). In *Avemco Insurance Co. v. GSF Holding Corp.*, 1997 U.S. Dist. LEXIS 13716 (S.D.N.Y. Sept. 5, 1997), the district court ruled on a transfer motion filed by multiple defendants who, the court found, had consented to jurisdiction in New York. *Id.* at *11. Citing *Hoffman*, the court granted the motion as to all defendants, despite their consent to jurisdiction in New York, because transfer would promote the convenience of the parties and the interests of justice. *Id.* at *15-25.

## V. CONCLUSION

The Complaint, as against hi5, should be dismissed because this Court lacks personal jurisdiction over hi5 and because venue in the Southern District of New York is improper. In the alternative, if the motion to dismiss is denied, hi5 respectfully moves this Court for a transfer of venue to the Northern District of California.

Dated: New York, New York  
     August 28, 2008

Respectfully submitted,  
COOLEY GODWARD KRONISH LLP

/s/ Janet L. Cullum_____  
Janet L. Cullum (JLC-2083)  
Emma Terrell (ET-1414)  
1114 Avenue of the Americas  
New York, NY 10036-7798  
Phone:   (212) 479-6000  
Fax:     (212) 479-6275

*Attorneys for Defendant hi5 Networks, Inc.*